MARGARET ELEANORA GALLIMORE, MOTHER; JOHN RAY GALLIMORE, FATHER, OF BONNIE LYNN GALLIMORE, DECEASED, EMPLOYEE v. MARILYN'S SHOES, EMPLOYER; BITUMINOUS CASUALTY CORP., CARRIER

No. 24

(Filed 14 April 1977)

1. Master and Servant § 56— workmen's compensation — whether accident arises out of employment — appellate review

   The determination of whether an accident arises out of and in the course of employment is a mixed question of law and fact, and the appellate court may review the record to determine if the findings and conclusions are supported by sufficient evidence. G.S. 97-86.

2. Master and Servant § 55— workmen's compensation — assault as accident

   An assault upon a shoe store employee when she went to her car in a mall parking lot after leaving work was an accident within the purview of the Workmen's Compensation Act.

3. Master and Servant § 56— workmen's compensation — in course of — arising out of

   As used in the Workmen's Compensation Act, the term "in the course of" refers to the time, place and circumstances under which an accident occurs, while the term "arising out of" refers to the origin or causal connection of the accidental injury to the employment.

4. Master and Servant § 56— workmen's compensation — accident arising out of employment

   The controlling test of whether an accident arises out of the employment is whether the injury is a natural and probable consequence of the nature of the employment.

5. Master and Servant § 56— workmen's compensation — accident arising out of employment

   In order for an injury to arise out of the employment, a contributing proximate cause of the injury must be a risk to which the employee is exposed because of the nature of the employment, and this risk must be such that it might have been contemplated by a reasonable

person familiar with the whole situation as incidental to the service when he entered the employment.

**6. Master and Servant § 56— workmen's compensation — shoe store employee — abduction in parking lot — subsequent robbery and shooting — accident not arising out of employment**

The death of a shoe store employee when she was abducted in a mall parking lot after leaving work and was thereafter robbed and shot to death did not arise out of her employment where there was evidence that her assailant had been informed that she often carried large sums of money but not that he had any information that she ever carried money belonging to her employer, the employee was not carrying any money belonging to her employer or any article indicating such at the time of her abduction, and there was no evidence that the employee ever made bank deposits for her employer unless accompanied by the manager or assistant manager, since (1) there was no evidence that the employee's risk of being robbed or abducted was affected by her employment, and (2) the risk of assault on the employee was essentially one common to the neighborhood and was not peculiar to the employment.

APPEAL as of right by defendants pursuant to G.S. 7A-30(2) to review the decision of the Court of Appeals, reported in 30 N.C. App. 628, 228 S.E. 2d 39, which affirmed the award to plaintiffs by the Industrial Commission filed on 3 September 1975.

Plaintiffs were the parents of Bonnie Lynn Gallimore and allege that Miss Gallimore sustained fatal injuries arising out of and in the course of her employment with defendant Marilyn's Shoes (Marilyn's).

From the stipulations of the parties and the evidence introduced before the Hearing Commissioner, it appears that on 3 November 1972 Miss Gallimore was employed by Marilyn's at its store in Westchester Mall in High Point. The duties of her employment consisted of selling merchandise, making sales reports and preparing deposits to be taken to the bank. Mrs. Margaret Gallimore (deceased's mother) testified that on two occasions prior to 6 October 1972 Mrs. Gallimore had accompanied her daughter to a "Branch Bank" located in the Westchester Mall wherein Miss Gallimore made deposits.

The manager of Marilyn's testified that it was company policy for the manager or assistant manager and one employee to take the daily deposits to the bank, and that such deposits were made after the store closed each evening at 9:00 p.m. The deposits were made at Wachovia Bank and Trust Company at

Westchester Mall, where Marilyn's had its account. The deposits were carried to the bank in a canvas bank bag placed in a shoe bag from the store. The manager testified that he knew of no instance in which this procedure was not followed.

At approximately 6:00 p.m. on the evening of 3 November 1972, Miss Gallimore left Marilyn's for the day, having completed her working hours. She went to her automobile (an orange Vega) parked in the mall lot. Upon arriving at her automobile, she was kidnapped by one Darrell Lee Young. Young took Miss Gallimore in her automobile to a secluded area. After attempting to fondle her, he robbed her of approximately one hundred dollars contained in her purse, and then shot and killed her. Young has entered a plea of guilty of second degree murder for the killing.

Young testified that he and two other persons (Jerry Allen and Timothy Wayne) had gone to Westchester Mall to steal tape players from automobiles in the parking lot. At the mall, Allen informed him that a certain orange Vega in the mall lot had a tape player in it, and that its owner was known to carry large sums of money. Young then agreed to rob the owner of the Vega; and in pursuance of the plan, Young abducted, robbed, shot and killed Miss Gallimore. Young testified that Miss Gallimore was carrying a regular handbag, not a bank or money bag, at the time of the abduction. He further testified that the information that Miss Gallimore was known to carry large sums of money originated from Allen's sister who worked in a store adjacent to Marilyn's.

Upon these facts, the Hearing Commissioner and, later, the Full Industrial Commission found that Miss Gallimore's death arose out of and in the course of her employment, within the meaning of the Workmen's Compensation Act, and awarded compensation. The Court of Appeals, with one member of the hearing panel dissenting, affirmed.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Harold I. Spainhour for plaintiff appellees.*

*Horton, Singer, Michaels & Hinton by Walter L. Horton, Jr. for defendant appellants.*

MOORE, Justice.

[1] For an injury to be compensable under our Workmen's Compensation Act (Chapter 97 of the General Statutes of North Carolina), the claimant must prove three elements: (1) That the injury was caused by an accident; (2) that the injury arose out of the employment; and (3) that the injury was sustained in the course of employment. G.S. 97-2(6); *Bryan v. Church*, 267 N.C. 111, 147 S.E. 2d 633 (1966). The findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence. However, the determination of whether an accident arises out of and in the course of employment is a mixed question of law and fact, and this Court may review the record to determine if the findings and conclusions are supported by sufficient evidence. G.S. 97-86; *Cole v. Guilford County*, 259 N.C. 724, 131 S.E. 2d 308 (1963); *Lewter v. Enterprises, Inc.*, 240 N.C. 399, 82 S.E. 2d 410 (1954).

[2] An assault may be an accident within the meaning of the Workmen's Compensation Act when it is unexpected and without design on the part of the employee who suffers from it. *Robbins v. Nicholson*, 281 N.C. 234, 188 S.E. 2d 350 (1972); *Withers v. Black*, 230 N.C. 428, 53 S.E. 2d 668 (1949). Under the facts in this case we hold that the assault upon Miss Gallimore was an accident within the purview of the Workmen's Compensation Act.

[3] We are thus confronted with the issue of whether the finding by the Commission that Miss Gallimore's death was caused by an injury "arising out of" and "in the course of" her employment with Marilyn's is supported by the evidence in the record. The phrases "arising out of" and "in the course of" one's employment are not synonymous but rather are two separate and distinct elements both of which a claimant must prove to bring a case within the Act. In general, the term "in the course of" refers to the time, place and circumstances under which an accident occurs, while the term "arising out of" refers to the origin or causal connection of the accidental injury to the employment. *See, e.g., Watkins v. City of Wilmington*, 290 N.C. 276, 225 S.E. 2d 577 (1976); *Robbins v. Nicholson, supra.* As was stated in *Bryan v. Church, supra,* at 115, 147 S.E. 2d at 635, the reason for the requirement that an injury arise from the employment is to prevent "our [Workmen's Compensation] Act from being a general health and insurance benefit act."

*See also Clark v. Burton Lines,* 272 N.C. 433, 158 S.E. 2d 569 (1968).

In the cases of *Robbins v. Nicholson, supra,* and *Harden v. Furniture Co.,* 199 N.C. 733, 155 S.E. 728 (1930), this Court has extensively analyzed the term "arising out of" the employment. In *Robbins v. Nicholson, supra,* the claimants were the survivors of two deceased employees of a grocery store. It appears from the evidence that on Christmas day, 1967, the husband of one of the deceased employees entered the grocery with a rifle and shot his wife and a co-worker. The shootings had their origin in domestic problems which had arisen between the assailant husband and his wife. The Commission awarded recovery to the survivors. This Court reversed, holding that while the injuries occurred "in the course of" the employment, they did not "arise out of" that employment. In reaching this conclusion, the Court quoted the following from *Harden v. Furniture Co., supra,* at 735, 155 S.E. at 730:

> " ' . . . The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' "

The Court further held that to be compensable, the injury must be caused by a risk which is reasonably related to and created by the employment. Since the origin of the shootings of the two employees had no relation to their employment, this Court held that no recovery was proper.

In *Harden v. Furniture Co., supra,* the plaintiff was the widow of a deceased employee. The employee was a night watchman and was slain while on the job by a fellow employee. The motive for the slaying was rooted in personal animosity between the two men. This Court denied recovery holding that the death did not arise out of the employment. In its opinion, the Court reasoned that to be compensable the injury must have a causal connection with the conditions under which the work is performed. Accordingly, where the assault upon the employee grows out of a motive foreign to the employment relationship, the necessary connection between the injury and the employ-

ment is not present and no compensation for the injury is proper.

The case of *Walk v. S. C. Orbach Co.*, 393 P. 2d 847 (Okla. 1964), is factually similar to the case at bar. In *Walk*, the employee-claimant sustained injuries when her purse was "snatched" as she was walking to her car at the end of her working day. The car was in a parking lot maintained by her employer and she contended that her injuries were compensable. The Oklahoma Supreme Court denied recovery on the ground that for an injury to be compensable it must arise out of a risk which is in some manner peculiar to the employment. The court reasoned that no recovery should be permitted for an injury caused by a risk to which all persons are exposed. Thus, in the absence of any evidence that the nature of her employment increased the risk of injury or that the employer's parking lot increased the risk of injury *(i.e., it was less safe than any other parking lot)*, the court held that the employee could not recover. This "increased-risk" test has been applied in decisions in other jurisdictions. *See Bloom v. Industrial Comm.*, 335 N.E. 2d 423 (Ill. 1975) ; *Malacarne v. City of Yonkers Parking Auth.*, 375 N.Y.S. 2d 206 (N.Y. App. Div. 1975) ; *West v. Home Indemnity Co.*, 444 S.W. 2d 786 (Tex. Civ. App. 1969) ; *O'Connor v. American Mutual Liab. Ins. Co.*, 87 So. 2d 16 (La. App. 1956).

[4, 5] From these cases, the controlling test of whether an injury "arises out of" the employment is whether the injury is a natural and probable consequence of the nature of the employment. A contributing proximate cause of the injury must be a risk to which the employee is exposed because of the nature of the employment. This risk must be such that it "might have been contemplated by a reasonable person familiar with the whole situation as incidental to the service when he entered the employment. The test 'excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. . . . ' " *Bartlett v. Duke University*, 284 N.C. 230, 233, 200 S.E. 2d 193, 195 (1973). In other words, the " 'causative danger must be peculiar to the work and not common to the neighborhood. . . . ' " *Harden v. Furniture Co., supra*, at 735, 155 S.E. at 730.

[6] In our view, the unquestioned facts compel the conclusion that the assault which caused Miss Gallimore's untimely death

did not arise out of her employment. There is no evidence that the assault and robbery were motivated in any way by her employment. Miss Gallimore was employed to sell merchandise, to make sales reports, and to prepare deposits to be taken to the bank. On the day in question she had completed her work and had signed out. She was not carrying any money belonging to her employer at the time of her abduction, nor was she carrying a bank bag or other article indicating that she was transporting any funds belonging to her employer. There was no evidence that Miss Gallimore ever made bank deposits on behalf of her employer unless accompanied by the manager or assistant manager. Mrs. Gallimore's testimony that she had accompanied her daughter to a "Branch Bank" on two occasions does not establish that her daughter ever made deposits for Marilyn's. Neither is there any evidence that Darrell Lee Young had any information that Miss Gallimore ever carried any money belonging to her employer. Hence, we are unable to conclude that there is any evidence in the record to show that Miss Gallimore's risk of being robbed or abducted was affected by her employment.

The risk of the assault upon Miss Gallimore was essentially one common to the neighborhood, not peculiar to the employment, and one which could happen to anyone who patronizes a shopping mall. As found by the Commissioner, "The Westchester Mall was well lighted and was no more hazardous than other areas of High Point. There had been several purse snatchers about the Westchester Mall as well as in other areas of High Point." The tragic and untimely death of Miss Gallimore was caused by the vicious and unreasoned criminal act of Darrell Lee Young, not by an accident arising out of her employment.

The cases cited by the Commission in support of its ruling, *Craig v. Electrolux Corp.*, 510 P. 2d 138 (Kan. 1973), and *Boulanger v. First Nat. Stores, Inc.*, 163 A. 261 (Conn. 1932), wherein the Kansas and Connecticut courts upheld compensation awards, are distinguishable from the case at bar. In *Craig*, the employee's duties consisted of both selling the employer's products and collecting payments from his customers. At the time the employee was slain, he was waiting in his car for a customer to arrive and thus was clearly in the course of his employment. The slayer admitted that he had seen the deceased with a large sum of cash earlier in the day and had followed him with the intent to rob him. This intent to rob, coupled with the fact that

the employee was required to carry substantial sums of money in his employment, led the court to uphold an award of compensation. In *Boulanger*, the employee was in charge of counting the daily proceeds of his employer's grocery store. Through observation, two men concluded that the employee carried the daily proceeds home in his briefcase. Hence, one evening while on his way to a mailbox to post a letter on behalf of his employer, the employee was relieved of his briefcase, shot and killed. The court held that because of his position and responsibilities with his employer, the employee's risk of being robbed was increased and his survivors were entitled to recover.

In both *Craig* and *Boulanger* there is a clear relation between the employment and the employee's death. The evidence clearly showed in each case that the risk of robbery was increased because of the fact that the employee was required to handle the employer's money as a part of his employment. Further, each of the employees possessed or appeared to possess his employer's money at the time of the assaults. In the case at bar, no such evidence appears. Therefore, we do not find these decisions to be controlling.

In view of our finding that Miss Gallimore's death did not arise out of her employment, it is not necessary for us to consider whether it arose "in the course of" her employment.

For the reasons stated, the decision of the Court of Appeals is reversed and the cause is remanded to that court with direction that it remand to the Industrial Commission for entry of an award for defendant in accordance with this opinion.

Reversed and remanded.