Barham v. Food World, Inc.

MARTHA BARHAM, Employee v. FOOD WORLD, INC., Employer, and STAND-
ARD FIRE INSURANCE COMPANY, Carrier

No. 7910IC688

(Filed 4 March 1980)

**Master and Servant § 62.1— workers' compensation—grocery store employee—in-
jury in loading zone while going from car to work site—on-premises injury**

    Plaintiff grocery store employee sustained an injury by accident arising
    out of and in the course of her employment when she slipped and fell on ice in
    a loading zone in front of defendant employer's store in a shopping center
    while she was walking to her·work site after parking her car in the shopping
    center parking lot where the loading zone was used for making deliveries to
    defendant's store and for loading groceries into the cars of the store's
    customers, and defendant on occasion exercised control over the loading zone
    by ordering people to move their cars therefrom, since the accident in effect
    occurred on defendant employer's premises.

        Judge HILL dissenting.

APPEAL by defendants from the opinion and award of the
North Carolina Industrial Commission filed 18 May 1979. Heard in
the Court of Appeals 6 February 1980.

    Plaintiff in this workers' compensation case is a woman who
was employed by defendant Food World at the time of her acci-
dent. She worked in the delicatessen and bakery section of a Food
World store located in a shopping center in Greensboro. On 4
February 1977, as plaintiff was walking from where she had
parked her car to her work site, she slipped and fell on a patch of
ice in front of the Food World store, sustaining injuries.

    On 16 January 1979 Commissioner Coy M. Vance filed an
opinion and award finding that plaintiff had sustained an injury
by accident arising out of and in the course of her employment.
Defendants appealed that decision to the full Commission which,
with one member dissenting, adopted and affirmed the hearing
commissioner's opinion and award. Defendants appeal from the
opinion and award of the full Commission.

    *McNairy, Clifford & Clendenin, by Harry H. Clendenin III,
for plaintiff appellee.*

    *Smith, Moore, Smith, Schell & Hunter, by J. Donald Cowan,
Jr. and William L. Young, for defendant appellants.*

MARTIN (Harry C.), Judge.

The issue presented for our review is whether the full Commission erred in adopting and affirming the opinion and award of the hearing commissioner determining that plaintiff sustained an injury by accident arising out of and in the course of her employment. Defendants argue that on the facts of this case plaintiff is not entitled to benefits under the Workers' Compensation Act and that the award in her favor should be reversed.

In affirming Commissioner Vance's award, the full Commission stated: "It is the opinion of the majority of the Full Commission that this is basically an 'on-premises' type case and that plaintiff was in the course of her employement." The Commission relies upon a series of cases in arriving at this decision, including *Maurer v. Salem Co.*, 266 N.C. 381, 146 S.E. 2d 432 (1966); *Davis v. Manufacturing Co.*, 249 N.C. 543, 107 S.E. 2d 102 (1959); and *Harless v. Flynn*, 1 N.C. App. 448, 162 S.E. 2d 47, *cert. denied*, 274 N.C. 274 (1968). This trio of cases recognized an exception to the general rule that injuries sustained in travel to and from work are not compensable under our statute. Justice Higgins succinctly outlined this exception in *Maurer:*

> ". . . the great weight of authority holds that injuries sustained by an employee while going to and from his place of work upon the premises owned or controlled by his employer are generally deemed to have arisen out of and in the course of the employment within the meaning of the Workmen's Compensation Acts and are compensable provided the employee's act involves no unreasonable delay." *Bass v. Mecklenburg County*, 258 N.C. 226, 128 S.E. 2d 570 (citing many authorities).

266 N.C. at 382, 146 S.E. 2d at 433-34.

The key phrase in this passage is "deemed to have arisen out of and in the course of the employment." Under the law of these cases, if an employee is found to have sustained injuries while going to or from work upon any part of his employer's premises, this is sufficient to hold the employee's injuries compensable. The required causal connection between the injuries and the employment has been satisfied, as set forth in *Davis, supra:*

It seems clear that claimant's going from this parking lot to her working area, all on her employer's premises, was a necessary incident to her employment, and there was a causal connection between her employment and the injury she received with the result that the injury by accident she suffered arose out of and in the course of her employment.

249 N.C. at 549, 107 S.E. 2d at 106.

We think that these cases are still controlling in the area of workers' compensation. Even after the North Carolina Supreme Court's decision in *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E. 2d 529 (1977), upon which defendants strongly rely and which we shall discuss *infra*, all three cases are cited by that same court in *Strickland v. King* and *Sellers v. King*, 293 N.C. 731, 239 S.E. 2d 243 (1977). In fact, even the passage from *Maurer* is set out in the *Strickland* opinion. In *Strickland* claimant was denied recovery, but on the basis that the accident occurred a substantial distance (1½) miles) from the employer's plant and parking lot.

Our conclusion, therefore, is that if it were determined without error that plaintiff sustained injuries while going to or from work upon any part of her employer's premises, she would be entitled to receive compensation for those injuries.

Commissioner Vance made the following findings of fact:

4. The defendant employer leased the store which gave them access to the entire parking lot of the shopping center to allow their customers and employees to use while shopping and working. There was a sidewalk which ran in front of each store in the shopping center.

5. There was a traffic lane marked off with yellow lines directly in front of defendant employer's store for the convenience of their customers to pick up and load their groceries. Delivery trucks also parked there when unloading supplies delivered to defendant employer. The bag boys employed by defendant employer placed groceries in customers' cars in the loading zone.

6. Mr. James Hill, manager of the store, notified employees where they should park while at work away from

directly in front of the store in order that the customers could use the space directly in front of the store.

7. There was a water drain coming from the roof of the store which emptied onto the loading zone. The water had frozen and made a strip of ice from the sidewalk out into the street.

8. On February 4, 1977, plaintiff was walking from where she had been instructed to park to her work position. She started to take a long step over the icy strip that was in the loading zone in front of Store No. 19. Her shoe heel struck the ice and she fell backwards breaking her ankle . . . .

9. Defendant employer leased space for Store No. 19 and the lease gave the store access to all parking space at the shopping center for its employees' and customers' use.

Defendants except to findings 4, 8, and 9. This Court, of course, is limited to determining whether there is any competent evidence in the record to support these findings of fact. *Byers v. Highway Comm.*, 275 N.C. 229, 166 S.E. 2d 649 (1969).

We think findings of fact 4 and 9 are supported by the evidence of Food World's vice-president and controller, Lowell Plunkett, who testified: "We have a right for our employees to use the parking lot." On further examination he also stated: "Food World does have the right for its customers to park there if they want to shop at the store." Similarly, we think there is competent evidence to support finding of fact 8. It is uncontested that Food World instructed its employees not to park directly in front of the store. Plaintiff, along with other Food World employees, had parked for more than two years in the west section of the parking lot.

The evidence supports the Commission's finding that plaintiff slipped and fell while in the loading zone in front of the store. This loading zone was not leased by Food World, but was marked with yellow lines on the pavement and used by Food World for delivery and unloading of supplies for the store. It was also used by the store's customers to load their automobiles with products bought in the store and by the store's bag boys who carried groceries to the customers' cars. They were not permitted to

---

Barham v. Food World, Inc.

---

carry customers' bags out into the parking lot. On occasions, Food World had also exercised control over the loading zone by ordering people to move their cars out of the zone.

As mentioned previously, defendants strongly rely upon the case of *Gallimore v. Marilyn's Shoes, supra,* in urging that the award to plaintiff be reversed. In *Gallimore,* an employee of a shoe store located in a shopping mall was kidnapped and fatally injured when she went to her car after leaving her place of work. The crucial distinguishing feature of *Gallimore* is that there is absolutely no evidence that it is an "on-premises" case. The employer in no way provided plaintiff with a parking place, and the killing did not occur in an area controlled by the employer or used by it in its business.

The findings of fact adopted by the full Commission support its opinion that the case *sub judice* is basically an "on-premises" type case.

In order for an accident to be "on-premises" within the meaning of *Maurer,* it is not necessary that the employer own or lease the area in question. It is enough that the employer controls the area and uses it in his business. The evidence in this case supports the conclusion that plaintiff was injured in an area, the loading zone, controlled by Food World and used in its business. Therefore, we affirm the Commission's conclusion that this is an "on-premises" case and that plaintiff sustained an injury by accident arising out of and in the course of her employment.

Affirmed.

Chief Judge MORRIS concurs.

Judge HILL dissents.

Judge HILL dissenting.

I must dissent from the opinion of the majority. I do not believe this to be an "on-premises" accident.

Plaintiff parked her car on the west side of the parking lot, walked across the parking lot, slipped on some ice located within the loading area in front of Food World, and sustained injuries.

The general rule is that injuries sustained in travel to and from work are not compensable. *See Bass v. Mecklenburg County,* 258 N.C. 226, 231-2, 128 S.E. 2d 570 (1962). The exception cited by the majority and set forth by Justice Higgins in *Maurer v. Salem Co.,* 266 N.C. 381, 146 S.E. 2d 432 (1966), holds that injuries sustained by an employee while going to or from his place of work upon premises *owned or controlled* by his employer are *generally* deemed to have arisen out of and within the course of his employment.

I object to the application of the rule in the *Maurer* case to the facts here. The present case is not an exception to the general rule.

The loading zone was an "in common area," not leased for the specific use of Food World. At least three stores out of a block of eight or nine stores had use of the loading zone, which extended across King's, Food World and Country Kitchen, and was separated from the stores by a sidewalk over which Food World had no control. The purported control found by the Commission arises only out of an instruction to the employees not to park in front of the store and a request by Food World to people to move their cars. There is no evidence that the cars were moved right away, if at all. Since there was no lease of the loading zone area to Food World specifically, there was no legal means by which Food World could keep anybody from using and controlling the loading zone. The voice of Food World could be no louder than that of a stranger and never was more than a request.

One of the purposes of the Worker's Compensation Act is to encourage employers to provide accident-free working conditions for their employees. When there is no legal right to control possession — by ownership or by lease — there can be no legal right to go onto the premises to correct danger and thereby prevent injuries such as the one suffered by the plaintiff. The absence of a lease to the loading area vesting some interest in Food World indicates the right of possession was retained by the owners of the shopping center.

The majority opinion attempts to distinguish *Gallimore v. Marilyn Shoes,* 292 N.C. 399, 233 S.E. 2d 529 (1977), by indicating that it is not an "on-premises" case, in contrast to *Davis v. Manufacturing Co.,* 249 N.C. 543, 107 S.E. 2d 102 (1959), where all

of the property was under the maintenance and supervision of the employer, and in contrast to *Maurer, supra,* where the automobile was in the company's lot, adjacent to the building where claimant worked.

In the *Gallimore* case, *supra,* Justice Moore dealt with the question of whether an injury did "arise out of" employment. Quoting from *Harden v. Furniture Co.,* 199 N.C. 733, at 735, 155 S.E. 728, at 730 (1930), the Court said:

'[T]he causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relationship of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a natural consequence.' *Gallimore,* at p. 403.

Justice Moore went on to say in *Gallimore, supra,* at page 403,

[T]he Court further held that to be compensable, the injury must be caused by a risk which is reasonably related to and created by the employment.

And again Justice Moore says, quoting from the case of *Walk v. S. C. Orbach Co.,* 393 P. 2d 847 (Okla. 1964):

The court reasoned that no recovery should be permitted for an injury caused by a risk to which all persons are exposed. Thus, in the absence of any evidence that the nature of her employment increased the risk of injury or that the employer's parking lot increased the risk of injury (i.e., it was less safe than any other parking lot), the employee could not recover. This 'increased risk' test has been applied in decisions in other jurisdictions. (Citations omitted.)

It is a well settled rule that, ". . . the controlling test of whether an injury 'arises out of' the employment is whether the injury is a natural and probable consequence of the nature of the employment." *Gallimore* at 404. A contributing proximate cause of the injury must be a risk to which the employee is exposed because of the nature of the employment. This risk must be such

that it might have been contemplated by a reasonable person familiar with the whole situation as incidental to the service when he entered the employment. "The test 'excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment . . . .' " *Gallimore* at 404.

In my opinion, the injury sustained by the plaintiff did not "arise out of" her employment. Stated simply, she had never reached her place of employment. Neither the parking lot in general nor the loading zone in particular was owned or under the control of the employer. She parked in one of the many parking spaces in the shopping center available to all employees. She walked some distance within the parking lot serving eight or nine stores to an area designated "loading zone" owned by the shopping center landlords. She saw ice in the loading zone over which Food World had no legal control, but was used by delivery trucks and shoppers alike patronizing several stores in the shopping center. She attempted to cross the landlord's property by stepping over the ice, slipped and fell, sustaining injuries. The ice had formed from water draining out of a downspout running from the top of the huge shopping complex owned by the landlord and going under the "public" sidewalk. Nothing in this record indicates responsibility or control by Food World over the downspout.

Other people were readily able to detect the ice in the loading area. It was a risk common to the area and in no way peculiar to the work of the employee, who worked in the delicatessen and bakery section of Food World. In no way can slipping on ice in a public area en route to work be contemplated as a risk incidental to such employment in a bakery shop and delicatessen. This was a danger to the public at large and should have been avoided.

In my opinion, the order of the Full Commission should be vacated and the case remanded for entry of an order dismissing the claim.