The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Alston. The appealing party has shown good ground to reconsider the evidence. In reviewing the evidence of record, it appears that the Deputy Commissioner gave undue weight to the testimony of John Hardin, the convicted murderer of the deceased employee. Hardin gave testimony at the hearing, which was inconsistent with prior statements he gave to law enforcement officers. The physical evidence at the scene also contradicted Hardin's hearing testimony. In view of the evidence at the crime scene and the inconsistencies in Hardin's testimony, the Full Commission finds Hardin's testimony is not credible and was given undue weight by the Deputy. The Full Commission REVERSES the Deputy Commissioner's denial of benefits and enters the following Opinion and Award. The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between Defendant-employer and Tonya White, the employee, now deceased.
3. ITT Hartford provided workers' compensation coverage at all times relevant to this claim.
4. The issue before the Commission was whether the death of Tonya White was the result of an injury by accident arising out of and in the course of her employment with Defendant?
5. The parties submitted documents via stipulation as follows:
a. Autopsy report dated August 29, 1991.
b. Death certificate dated August 28, 1991.
 c. Letter from Barbara Taylor with ITT Hartford dated January 18, 1994.
d. Industrial Commission Forms 18, 22, 33, and 33R.
 e. Birth Certificate for Johannia Hardin, and custody papers.
 f. Superior Court Judgment and Commitment of John Hardin.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. The deceased, Tonya White, was born on March 21, 1968, and was 23 years of age on August 15, 1991.
2. Johannia Samellia Hardin is the minor child of Tonya White and survived her death. Johannia was born on July 20, 1987. Delba Benjamin White, the maternal grandmother of Johannia Hardin is her legal guardian and was granted legal custody of the child by Court Order filed on February 1, 1996.
3. On August 15, 1991, Tonya White was employed by Defendant as a sales supervisor, and was responsible for overseeing the retail stores. As of that date, she had an average weekly wage of $361.41. She was known as a good employee, who would call in to notify her employer if she was running late.
4. One of White's job duties was to take the night deposit bag to the bank. She often closed the store, and her habit was to go directly to the bank to make the deposit, after leaving the Defendant's store.
5. John S. Hardin was the father of Tonya White's child Johannia Hardin. As of August 15, 1991, he and White and Johannia lived together. Hardin sometimes drove White to work and picked her up. He was aware that she made night deposits and had in the past driven her to the bank to make these deposits.
6. Prior to August 15, 1991, Hardin had attempted to steal money from the Goodwill night deposit bag on at least one occasion. He had removed the cash and replaced it with newspaper. However, the act had been discovered before the deposit was made, such that the money could be replaced. Hardin had, in the past, also taken money from White's checking account.
7. On August 15, 1991, Tonya White's aunt, Venus McLaughlin, was keeping Johannia as usual. White would usually pick up Johannia after leaving work and making the night bank deposit. On the evening of August 15, 1991, McLaughlin spoke to White between 7:00 and 7:15 p.m. They arranged for White to meet McLaughlin at church in about 15 to 20 minutes to pick up Johannia.
8. On August 15, 1991, shortly after 7:00 p.m., Hardin came to the Goodwill store to pick up Tonya White after work. When Hardin picked her up, White had the bank night deposit bag with her. Hardin did not drive White to the bank to make the deposit and did not take her to pick up her child, but instead took her home to their apartment.
9. Both White and Hardin entered the apartment. After they entered, Hardin bound and gagged White, tying her to the bed using neckties and a coat hanger. Hardin stuffed a child's shirt into White's mouth and tightly covered her face with a child's sweatpants. As a result, White died by suffocation.
10. When White failed to meet her aunt at church and pick up Johannia, her aunt called the apartment and spoke to Hardin, who told her that Tonya had gone out with friends. Hardin then went to pick up Johannia and brought her back to the apartment and put her to bed.
11. After putting the child to bed, Hardin took money from White's purse and took the money from the bank deposit bag. He left in White's car, traveling to South Carolina, where he was arrested the next day.
12. Following his arrest, Hardin made a statement to the police, in which he admitted that he killed Tonya White. He pled guilty to and was convicted of second degree murder and larceny. He was sentenced to prison for life.
13. When White did not report to work the next day, her supervisor checked with the bank and learned that the night deposit had not been made the previous evening. She tried to reach Tonya by a telephone call to Tonya's apartment, but got no answer.
14. Detective David Spagnola, who has been in law enforcement for 22 years, was involved in the investigation of White's murder. He examined the scene, where he found the body of Tonya White bound and gagged and tied to the bedpost. A open pocketbook, emptied of money, and bank deposit bag, which had been ripped open and was empty, were found on the floor of the bedroom where White's body was found.
15. Hardin testified that he and White had a quarrel, which began on the morning of August 15, and continued that evening after he picked her up from work. However, the crime scene did not indicate a crime that resulted from a lover's quarrel. The evidence did not indicate a struggle or defensive wounds. White had been violently bound and gagged, the type of murder committed by someone seeking money to buy drugs. The undersigned do not find Hardin's testimony to be credible. Even if Hardin's testimony regarding a quarrel with White were taken as true, the evidence establishes that Hardin took the money from the bank deposit bag, and left the empty bag in the bedroom with White's body. The greater weight of the evidence shows that Hardin knew that White had the bank deposit when he picked her up from work and that the theft of the money was, at least in part, a motive for Hardin's actions which resulted in White's death.
16. Delba Benjamin White, mother of Tonya White, paid in excess of $2,000 for the burial expenses for White.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following
 CONCLUSIONS OF LAW
1. The average weekly wage of Tonya White of $361.41 yields a compensation rate of $241.06. N.C. Gen. Stat. § 97-2(5).
2. Plaintiff's job responsibility for making a night bank deposit on behalf of the Defendant-employer placed her at an increased risk of assault from anyone who might try to steal the deposit bag. The deadly assault on Tonya White was an accident in that it was an unexpected event that interrupted White's work routine. The assault occurred before she could complete the task of making the bank deposit. Since the assault in this case was motivated, at least in part, by the assailant's desire to steal the bank deposit money, Tonya White's death on August 15, 1991 occurred as a result of an accident arising out of and in the course of her employment with Defendant-employer. N.C. Gen. Stat. § 97-2(6). This case is distinguishable from the case of Gallimorev. Marilyn's Shoes, 292 N.C. 399 (1977), since the employee in that case did not have custody of the employer's funds at the time she was assaulted. This case is also distinguishable from the case of Ross v. Mark's Inc., 120 N.C. App. 607 (1995), where the Commission found the motive of the assailant was solely personal.
3. The minor child of Tonya White, Johannia Hardin is conclusively presumed to have been dependent upon White for support at the time of White's death. As the sole dependent at the time of White's death, her minor daughter Johannia Hardin is entitled to receive all benefits which are due under the Workers' Compensation Act as a result of her mother's death. N.C. Gen. Stat. §§ 97-38, 97-39.
4. Defendants are responsible for payment of compensation benefits at the rate of $241.06 per week for the support and benefit of Johannia Hardin, a minor, for 400 weeks and continuing until she reaches age 18. N.C. Gen. Stat. § 97-38.
5. Defendants are responsible for reimbursement of burial expenses in the amount of $2,000 to Delba K. Benjamin. N.C. Gen. Stat. § 97-38.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay compensation at the rate of $241.06 per week for the support and benefit of Johannia Hardin, a minor, for 400 weeks and continuing until she reaches age 18. Such benefits shall be paid to Delba K. Benjamin, the maternal grandmother and legal guardian of Johannia Hardin for the minor's benefit. Such benefits as have accrued to date shall be paid in a lump sum, subject to the attorney's fee approved hereafter.
2. Defendants shall reimburse Delba K. Benjamin in the amount of $2,000 as burial expenses.
3. Plaintiff's counsel has rendered valuable legal services. A reasonable attorney's fee of $21,695, which represents approximately twenty-five percent of the accrued benefits awarded herein, is approved for Plaintiff's counsel. This amount shall be deducted from the accrued benefits due and paid to directly to Plaintiff's counsel. The balance of benefits accrued and all future payments shall be paid as ordered above for the behalf of the deceased's minor child. Future payments are not subject to further counsel fees.
4. Defendants shall pay the costs.
 S/ ________________________ KIM L. CRAMER DEPUTY COMMISSIONER
CONCURRING:
S/ ______________________ DIANNE C. SELLERS COMMISSIONER
S/ ______________________ THOMAS J. BOLCH COMMISSIONER