The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William C. Bost and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing on 21 January 1998 and thereafter as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer-on 22 September 1995.
3. Defendant-employer had workers' compensation insurance through Carrier-Defendant Peerless Insurance Company and such policy was in full force and effect on September 22, 1995.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff was born on 13 April 1974, and was 21 years old on 22 September 1995. On that date, plaintiff was approximately seven months pregnant.
2. On 22 September 1995, plaintiff was employed by defendant-employer as a lab technician. Her job description consisted of performing general lab work, including allergy injections.
3. On Friday, 22 September 1995, plaintiff was scheduled to work from 8:00 a.m. until 5:00 p.m.
4. On that date, plaintiff drove her 1993 white Honda Civic EX from her home to the parking lot of Sylva Medical Center, and arrived in the parking lot a few minutes before 8:00 a.m.
5. A trash dumpster occupied one parking space in the parking lot of Sylva Medical Center.
6. On the morning of 22 September 1995, plaintiff parked her car in a parking space directly beside the trash dumpster. She parked in that space because it was raining that morning and the parking space she chose was close to the building. Plaintiff also parked directly beside the trash dumpster because she brought a bag of trash from her home, which was in the back of her car, and which she intended to dispose of in the dumpster. The trash dumpster was located between plaintiff's car and the side of the Sylva Medical Center building.
7. Plaintiff parked her car, released the trunk, and got out of her car. As plaintiff walked toward the trunk of her vehicle, a man named Mitchell Scott Turpin approached her from behind the dumpster, holding a gun.
8. Mr. Turpin directed that plaintiff get back in the driver's seat of her vehicle, and he got in the front passenger seat. Mr. Turpin directed that plaintiff drive him toward Cullowhee, North Carolina, and gave her specific directions as to which roads to turn onto and which route to follow.
9. Mr. Turpin had plaintiff drive him to Cullowhee, and directed her to a hill near Western Carolina University, known as "KA hill". During the trip, Mr. Turpin did not strike or hit the plaintiff in any way. When Mr. Turpin and plaintiff arrived at KA hill, he directed her to get out of the car, and sit down in front of a tree with her back to the tree. Mr. Turpin used duct tape to tape plaintiff to the tree.
10. Mr. Turpin then got in plaintiff's car and drove away from the hill. Thereafter, plaintiff was able to free herself from the duct tape and she proceeded down the hill to a nearby road, where she stopped a passing vehicle. Plaintiff reached the road shortly before 8:45 a.m.
11. After he took plaintiff's vehicle, Mr. Turpin drove to Cashiers, North Carolina, and attempted to rob a Centura bank. He was shot by a bystander and apprehended by local authorities.
12. In the statement Mr. Turpin gave to the Federal Bureau of Investigation, which was stipulated into evidence, Mr. Turpin stated that on the morning of 22 September 1995, he had been awake all night drinking alcohol, and started walking from his home on Old Asheville Highway in Sylva. As he was walking, Mr. Turpin contemplated robbing a bank. Mr. Turpin further stated that he ended up at Sylva Medical Center, sat down behind the trash dumpster, finished consuming a pint of rum, and threw the empty bottle into the dumpster. Mr. Turpin was thinking of approaching one of the people arriving at Sylva Medical Center to demand a ride, when plaintiff parked her car beside the dumpster. He then approached plaintiff and told her to drive him to Cullowhee.
13. At the time of the incident in the parking lot of Sylva Medical Center on 22 September 1995, several other employees of Sylva Medical Center had already arrived at work, and their vehicles were in the parking lot.
14. The kidnapping incident was not witnessed by any employees of the Sylva Medical Center.
15. At the time of the kidnapping incident, plaintiff had not yet gone inside Sylva Medical Center, she had not started her shift, she had not punched her time card, and she was not performing her job duties as a lab technician.
16. At the time of the kidnapping incident, plaintiff was not in possession of any money or other items belonging to Sylva Medical Center which would have indicated that she was transporting funds belonging to her employer. Plaintiff's job as lab technician never involved handling money on behalf of Sylva Medical Center.
17. At the time of the kidnapping incident, plaintiff was dressed in a manner typical of a medical office employee.
18. Mr. Turpin was not an employee or former employee of defendant-employer, and did not know plaintiff prior to the 22 September 1995 incident.
19. Several years prior to the 22 September 1995 incident, Sylva Medical Center installed a security system in the building.
20. The parking lot at Sylva Medical Center was maintained for the use of Sylva Medical Center employees and patients.
21. Plaintiff alleges that she sustained certain injuries as a result of the 22 September 1995 incident.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. North Carolina General Statute § 97-2(6) provides that an injury within the meaning of the workers' compensation act "shall mean only injury by accident arising out of and in the course of the employment."
2. Plaintiff did not sustain a compensable injury by accident arising out of and in the course of her employment. N.C.G.S. § 97-2(6).
3. For an injury to an employee arising from an assault or criminal activity by an outsider to be compensable, the attack must have been created by and reasonably related to the employee-plaintiff's employment. The assault must have had such a connection with the employment that it can logically be found that the nature of the employment created the risk of the attack.Hemric v. Reed and Prince Manufacturing Company, 54 N.C. App. 314,283 S.E.2d 436 (1981). In the present case, plaintiff's abduction by Mr. Turpin on 22 September 1995 was not reasonably related or connected to her employment as a lab technician at Sylva Medical Center. The nature of plaintiff's employment at Sylva Medical Center as a lab technician did not create the risk of the abduction by Mr. Turpin.
4. For an injury to "arise out of the employment", it must come from a risk which might have been contemplated by a reasonable person as incidental to the job when he entered that employment. Robbins v. Nicholson, 281 N.C. 234, 188 S.E.2d 350
(1972), citing Lockey v. Cohen, Goldman Co., 213 N.C. 356, 359,196 S.E.2d 342, 344-345 (1938). See also Gallimore v. Marilyn'sShoes, 292 N.C. 399, 233 S.E.2d 529 (1977). A reasonable person employed at Sylva Medical Center would not have contemplated the risk of being abducted as being incidental to the job of a lab technician. Thus, plaintiff's injuries, if any, caused by the abduction on 22 September 1995, did not arise out of her employment within the meaning of the Workers' Compensation Act, and are not compensable. N.C.G.S. § 97-2(6).
5. Mr. Turpin abducted plaintiff solely because he wanted transportation to facilitate his bank robbery. His abduction of plaintiff was in no way related to her employment as a lab technician at Sylva Medical Center. Because plaintiff's abduction occurred because of a "motive foreign to the employment relationship, the necessary connection between the injury and the employment is not present and no compensation for the injury is proper." Gallimore v. Marilyn's Shoes, 292 N.C. 399,233 S.E.2d 529 (1977), citing Harden v. Furniture Co.,199 N.C. 733, 155 S.E. 728 (1930).
6. At the time of the 22 September 1995 incident, plaintiff had not begun her shift and she parked beside the dumpster for personal reasons — so she could dispose of the bag of trash from her home and so she could park as close as possible to the building to avoid the rain. She was not engaged in her job duties at the time of the abduction, and there is no evidence in the record to suggest that plaintiff's risk of being abducted was affected by her employment. Gallimore, 292 N.C. at 405.
7. Plaintiff has not proven that the nature of her employment as a lab technician increased the risk of injury, or that the condition of defendant-employer's parking lot increased the risk of injury. The risk of assault was common to the neighborhood and was not peculiar to plaintiff's employment.Gallimore v. Marilyn's Shoes, 292 N.C. 399, 233 S.E.2d 529
(1977).
8. The injuries to plaintiff, if any, were caused by the unanticipated criminal act of Mr. Turpin, not by an accident arising out of her employment. Gallimore, 292 N.C. at 405.
9. Plaintiff has failed to prove by the greater weight of the evidence that she sustained a compensable injury by accident arising out of and in the course and scope of her employment.
 ***********
Based upon the foregoing findings of fact, and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Under the law, plaintiff's claim must be, and the same is, denied.
2. Each side shall bear its own costs.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER