I must respectfully dissent from the majority in this matter and would vote to adopt the Deputy Commissioners Opinion and Award denying benefits in this case. The greater weight of the evidence indicates that plaintiff did not suffer a compensable injury by accident or a specific traumatic incident on March 12, 1997, resulting in an injury to her neck. Furthermore, according to the greater weight of the medical evidence of record, any incident occurring on March 12, 1997 did not result in any appreciable consequences.
Plaintiff contends she injured her neck at work on March 12, 1997, while performing the McDonalds procedure during a delivery when she allegedly felt something "like I pulled a muscle in my [right] shoulder. According to plaintiff, she felt almost constant pain from that day forward. Nevertheless, she failed to report any incident to her supervisor who was actually present at the time of the alleged injury. In fact, plaintiff was assisted by her direct supervisor, Montrice Chapman during her performance of the McDonalds procedure. Significantly, plaintiff did not mention any incident to Ms. Chapman on March 12, 1997 or at any other time.
Nevertheless, plaintiff knew the proper procedure to follow. As the charge nurse, plaintiff supervised the nursing staff assigned to her shift. Her duties included receiving reports of work related injuries or illnesses from employees she supervised. She completed incident reports for injured workers, or directed them in the completion of such forms. Prior to March 12, 1997, she had taken reports from other workers for strained muscles and related problems. Significantly, as the charge nurse, plaintiff had been instructed regarding the employers procedures for workplace injuries. These procedures require any employee who is injured, or feels she may be injured on the job, to report the occurrence and complete an incident report. The procedures are maintained in a manual, which is accessible to all employees. Plaintiff acknowledged that the correct procedure to follow for a work injury was to complete an incident report. Furthermore, it is evident that plaintiff knew the procedure for reporting injuries since, prior to the March 12, 1997 alleged incident, plaintiff had completed incident reports on two occasions for exposure to blood. Plaintiff finally first notified her employer of her alleged injury on June 17, 1997, when she called Ms. Beeson, the manager of Womens Health Services at Gaston Memorial Hospital. Although Dr. Sales, who plaintiff was assisting at the time of the alleged injury, wrote plaintiffs attorney a letter on December 19, 1997, at plaintiffs request, documenting her recollection of the events in the delivery room on March 12, 1997, Dr. Sales version differs significantly from that of plaintiff and is therefore given little weight.
Plaintiffs failure to promptly notify the employer of her alleged injury prevented the employer from having plaintiff immediately evaluated by the employers Medical Director or an emergency room physician. Medical treatment is available at Gaston Memorial to any employee injured on the job. The employer did not have an opportunity to offer plaintiff light duty, which may have prevented surgery. Plaintiffs conduct was prejudicial to the employer and raises questions regarding plaintiffs credibility.
Not only did plaintiff fail to promptly report any incident to her supervisor she also failed to promptly report any incident or injury to her medical providers. This is significant in particular since plaintiff is a nurse and is well aware of the importance of providing an accurate medical history to ensure proper diagnosis and treatment. On April 9, 1997, plaintiff presented to the employers employee health nurse for her annual physical examination. As part of the annual physical, each employee is given a sheet to review and sign, which specifically details the procedures for reporting work-related injuries and filing workers compensation claims. Importantly, plaintiff did not mention any work-related injury. Shortly thereafter, plaintiff first sought medical treatment on April 14, 1997, at Gaston Internal Medicine, where she saw Carl Stowe, a physicians assistant. Mr. Stowe specifically questioned plaintiff about the onset and duration of her neck pain. Nevertheless, plaintiff failed to mention an injury of any type. In fact, she did not mention her job at all during her conversations with Mr. Stowe. At that time, plaintiffs x-ray revealed degenerative disc disease of the cervical spine. Thereafter, plaintiff reported to the Rehab Department at Gaston Memorial Hospital on April 17, 1997, for physical therapy, at which time she came under the care of Baker Leigh. She completed an intake sheet wherein she described a 30-day history of pain in her right arm, shoulder, and neck. Once again plaintiff failed to mention an injury occurring at work. In fact, plaintiff marked through the space on the form for indicating the date and time of any "accident or whether there was an injury at work. Furthermore, Mr. Leigh obtained a history from plaintiff that she had been experiencing neck pain for about a month and that she had degenerative disc disease at C5-7. His history indicated that plaintiff never reported injuring herself in the delivery room. The next time plaintiff sought medical treatment was May 23, 1997, when she consulted Dr. David Thomas. Once again plaintiff failed to provide a history of a work-related injury. It was not until plaintiff was seen by Dr. Gudeman on May 29, 1997, for neck and arm pain that she finally reported developing neck shoulder pain after a lifting or pushing event three months earlier.
Next, considering plaintiffs lack of reporting, questionable credibility as well as the totality of the medical evidence of record, plaintiffs cervical degenerative disc disease at C5-6, with spondylosis causing foraminal encroachment is not causally related to any work-related incident. Her condition is a chronic condition associated with aging that develops over time. Furthermore, plaintiff did not have diagnostic evidence of trauma of her cervical spine. Degenerative disc disease is progressive and can become symptomatic without trauma. It can produce pain in the neck and upper extremities. In fact, plaintiffs symptoms were consistent with her level of cervical pathology, without a history of trauma.
A claimant seeking compensation under the Act has the burden of proving that her injury was caused by an accident resulting in disability.Gallimore v. Marilyns Shoes, 292 N.C. 399, 233 S.E.2d 529 (1977); N.C. Gen. Stat. 97-2(6). In the instant case, plaintiff has failed to meet her burden of proof including that of medical causation. Finally, plaintiffs claim should be barred by N.C. Gen. Stat. 97-22 for failure to provide timely notice or a reasonable excuse for the failure to do so which resulted in prejudice to the employer.
S/_______________ DIANNE C. SELLERS COMMISSIONER