KEITH ALEXANDER RAGLAND, Plaintiff v. DAVID LEE HARRIS, Defendant

No. COA01-1124

(Filed 6 August 2002)

**Workers' Compensation— jurisdiction—automobile accident in workplace parking lot**

The trial court correctly dismissed plaintiffs' negligence action where plaintiff was injured in an automobile accident in a parking lot after work and his remedy falls within the exclusivity provisions of the Workers' Compensation Act. The evidence was that plaintiff's conduct after his shift ended was devoted exclusively to looking for a ride home and then waiting for that ride to materialize. The fact that other alternatives existed does not render plaintiff's conduct unreasonable by itself.

Appeal by plaintiff from order entered 27 November 2000 by Judge Orlando F. Hudson, Jr. in Vance County Superior Court. Heard in the Court of Appeals 6 June 2002.

*Harvey D. Jackson for plaintiff-appellant.*

*Bailey & Dixon, L.L.P., by Dayatra T. King, for defendant-appellee.*

CAMPBELL, Judge.

On 21 July 1998, plaintiff filed the instant action in Vance County Superior Court alleging that defendant's negligent operation of an automobile in which plaintiff was a passenger caused an accident that resulted in injuries to plaintiff. On 3 August 1998, the summons and a copy of the complaint were returned unserved on defendant, for the stated reason that defendant no longer lived at the address indicated on the summons. On or about 17 August 1998, Nationwide Mutual Insurance Company ("Nationwide") appeared on behalf of the allegedly uninsured defendant and filed a motion to dismiss plaintiff's action on the grounds of insufficiency of process, insufficiency of service of process, and lack of personal jurisdiction. The record does not contain a ruling on this motion. On 15 March 1999, Nationwide filed a motion for summary judgment, which was withdrawn on 27 April 1999. On 16 October 2000, Nationwide filed an answer admitting defendant's negligence but denying that his negligence resulted in the injuries allegedly received by

plaintiff. Nationwide also moved to dismiss the action for lack of subject matter jurisdiction based on the exclusivity provisions of the North Carolina Workers' Compensation Act. *See* N.C. Gen. Stat. § 97-10.1 (2001). The case was tried at the 30 October 2000 Civil Session of Vance County Superior Court.

Plaintiff's evidence at trial tended to show that he and defendant were co-workers at Southern Quilters, a manufacturer of pillowcases and bed comforters. On the morning of 22 November 1996, plaintiff's work shift ended earlier than scheduled. Plaintiff asked defendant for a ride home. Defendant responded that he could give plaintiff a ride home but that he had "some business to take care of" before they left. Plaintiff then waited in the break room for defendant for approximately twenty to twenty-five minutes. Thinking defendant had left, plaintiff went outside to the parking lot, which was owned and operated by Southern Quilters, to find another ride home. Plaintiff saw defendant in the parking lot speaking with another fellow employee. After defendant finished his conversation, he approached plaintiff and the two of them got into defendant's car. Defendant then drove his car into the vehicle being operated by the individual with whom he had just been talking. Plaintiff testified that he sustained injuries to his neck and back in the collision and that his injuries resulted in medical expenses, loss of income and other related damages.

At the close of plaintiff's evidence, Nationwide moved for a directed verdict on the grounds that plaintiff's evidence demonstrated as a matter of law that his action against defendant was barred by the exclusivity provisions of the Workers' Compensation Act ("the Act") and therefore the trial court lacked subject matter jurisdiction over the action. The trial court agreed and dismissed plaintiff's action due to a lack of subject matter jurisdiction. Plaintiff appeals.

The sole issue on appeal is whether the trial court erred in dismissing the action for a lack of subject matter jurisdiction based on the exclusivity provisions of the Act. For the following reasons, we affirm the trial court's dismissal of plaintiff's action.

"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." N.C. R. Civ. P. 12(h)(3) (2001). Thus, "[a]n objection to subject matter jurisdiction may be made at any time during the course of the action." *Vance Construction Co. v. Duane White Land Corp.*, 127 N.C. App. 493, 494, 490 S.E.2d 588, 589 (1997).

RAGLAND v. HARRIS

[152 N.C. App. 132 (2002)]

For an injury to be compensable under the Act, the employee must show that the injury was caused by an accident arising out of and in the course of the employment. N.C. Gen. Stat. § 97-2(6) (2001); *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977). Injuries incurred by an employee in the course of employment due to the negligence of a co-employee fall within the provisions of the Act. *Pleasant v. Johnson*, 312 N.C. 710, 713, 325 S.E.2d 244, 247 (1985). "[T]he rights granted an injured employee under the Act are the exclusive remedy in the event of the employee's injury by accident in connection with the employment." *Reece v. Forga*, 138 N.C. App. 703, 705, 531 S.E.2d 881, 883 (2000); N.C. Gen. Stat. § 97-10.1. The exclusive jurisdiction of such cases is statutorily conferred upon the Industrial Commission. *Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 350 S.E.2d 83 (1986). Therefore, an employee who sustains an injury by accident arising out of and in the course of employment cannot maintain a common law action against a co-employee whose negligence caused the injury. *Pleasant*, 312 N.C. at 713, 325 S.E.2d at 247.

Within the meaning of the Act, an accident is an " 'unlooked for and untoward event which is not expected or designed by the person who suffers the injury.' " *Adams v. Burlington Industries, Inc.*, 61 N.C. App. 258, 260, 300 S.E.2d 455, 456 (1983) (citation omitted). It is clear that the alleged injuries sustained by plaintiff in the automobile collision in the instant case are injuries by accident within the purview of the Act. The remaining inquiry is whether the accident was one arising out of and in the course of plaintiff's employment.

"The phrases 'arising out of' and 'in the course of' one's employment are not synonymous but rather are two separate and distinct elements both of which a claimant must prove to bring a case within the Act." *Gallimore*, 292 N.C. at 402, 233 S.E.2d at 531. "In general, the term 'in the course of' refers to the time, place and circumstances under which an accident occurs, while the term 'arising out of' refers to the origin or causal connection of the accidental injury to the employment." *Id.* As a general rule, "an injury by accident occurring while an employee travels to and from work is not one that arises out of or in the course of employment." *Royster v. Culp, Inc.*, 343 N.C. 279, 281, 470 S.E.2d 30, 31 (1996). However, "[a] limited exception to the 'coming and going' rule applies when an employee is injured when

going to or coming from work but is on the employer's premises." *Id.*[1]
" '[I]njuries sustained by an employee while going to and from his place of work upon the premises owned or controlled by his employer are generally deemed to have arisen out of and in the course of the employment within the meaning of the Workmen's Compensation Acts and are compensable provided the employee's act involves no unreasonable delay.' " *Maurer v. Salem Co.*, 266 N.C. 381, 382, 146 S.E.2d 432, 433-34 (1966) (quoting *Bass v. Mecklenburg County*, 258 N.C. 226, 232, 128 S.E.2d 570, 574 (1962)).

In *Maurer*, an employee ("Maurer") had arranged to ride home after work with one of his fellow employees ("Caudle"). At the end of the workday, Maurer and Caudle went to Caudle's car, which was located in the employer's parking lot. The car would not start and the two of them spent approximately twenty to twenty-five minutes attempting to get the engine started. Finally, they released the brakes and attempted to start the engine by pushing the vehicle. During this attempt, the forward movement of the vehicle caught and injured Maurer. As a result, Maurer filed a claim for compensation with the North Carolina Industrial Commission ("the Commission"). The Commission concluded that Maurer had suffered an injury by accident arising out of and in the course of his employment and awarded compensation. On appeal, the Supreme Court concluded that the delay between the time Maurer left the employer's plant and the time Maurer was injured was not unreasonable because it was "devoted exclusively to their efforts to start the vehicle," in an attempt to leave the employer's premises. *Id.* at 382, 146 S.E.2d at 433. Thus, the Court held that Maurer's injury fell "within the exception to the general rule that injuries in travel to and from work are not compensable." *Id.*

In *Harless v. Flynn*, 1 N.C. App. 448, 162 S.E.2d 47 (1968), the plaintiff was injured in an accident in the parking lot owned and maintained by her employer. The accident was caused by the negligence of the plaintiff's co-employee while both parties were in vehicles that were leaving the employer's premises during a lunch break. This Court set forth the law on the subject as follows:

> With respect to *time*, the course of employment begins a reasonable time before actual work begins, and continues for a

---

1. "It is usually held that an injury on a parking lot owned or maintained by the employer for his employees is an injury on the employer's premises." *Maurer v. Salem Co.*, 266 N.C. 381, 382-83, 146 S.E.2d 432, 434 (1966). In the instant case, the parties do not dispute that the parking lot in which the accident at issue occurred was owned and controlled by the employer for the benefit of its employees.

reasonable time after work ends, and includes intervals during
the work day for rest and refreshment . . . . With respect to *cir-
cumstances*, injuries within the course of employment include
those sustained while 'the employee is doing what a man so
employed may reasonably do within a time which he is employed
and at a place where he may reasonably be during that time to do
that thing.' . . . And an employee may be in the course of his
employment when he is on the way to the place of his duties, leav-
ing the place of his duties at the end of the day, or leaving upon
learning that there was no work for him to do.

*Harless*, 1 N.C. App. at 456, 162 S.E.2d at 52-53 (emphasis in original)
(internal citations omitted). The Court then concluded that the plain-
tiff was injured during the course of her employment since leaving
the employer's premises during lunch was an activity permitted by the
employer and one in which other employees customarily partici-
pated. In addition, the Court concluded that the plaintiff's injury was
attributable to the heightened risk present when large numbers of
employees were attempting to leave the employer's parking lot.
Accordingly, the Court held that the plaintiff's injuries arose out of
and in the course of her employment, thus barring the plaintiff's
common law action against the defendant.

In the instant case, plaintiff was allowed to leave his place of
employment early because there was no work for him to do. As a
result, plaintiff was without a ride home. Plaintiff successfully
secured a ride home from defendant, but was told that he would have
to wait for defendant to "finish up some business." Plaintiff waited in
the break room for defendant for twenty to twenty-five minutes, then
proceeded out to the parking lot, where he waited for defendant for a
few more minutes while defendant finished a conversation with
another fellow employee. In sum, the evidence tends to show that
plaintiff waited for a ride for approximately thirty minutes after his
work shift ended. However, under the decisions in *Maurer* and
*Harless*, it is clear that the length of time between an employee get-
ting off work and the employee leaving the employer's premises is not
the determinative factor. Rather, the conduct of the employee during
the delay must be judged to determine whether "the employee [was]
doing what a man so employed may reasonably do[.]" *Harless*, 1 N.C.
App. at 456, 162 S.E.2d at 53. Here, the evidence shows that plaintiff's
conduct after his work shift ended was devoted exclusively to look-
ing for a ride home and then waiting for that ride to materialize. There
is no evidence that plaintiff's decision to wait for defendant was

NATIONWIDE MUT. INS. CO. v. HAIGHT

[152 N.C. App. 137 (2002)]

unreasonable. The fact that other alternatives may have existed that would have reduced plaintiff's delay in leaving the employer's premises, such as asking another fellow employee for a ride or calling his normal ride to inform them he was ready, does not by itself render plaintiff's conduct unreasonable. Under the facts and circumstances of this case, we find that plaintiff acted as "a man so employed may reasonably" act in his efforts to leave his place of employment following his work shift. *Id.* Therefore, we conclude that plaintiff's alleged injuries arose out of and in the course of his employment. Accordingly, plaintiff's remedy falls within the exclusivity provisions of the Workers' Compensation Act, with jurisdiction statutorily conferred upon the Industrial Commission, and plaintiff may not maintain this common law action against defendant. Thus, we affirm the trial court's dismissal of plaintiff's action.

Affirmed.

Judges MARTIN and TIMMONS-GOODSON concur.