McGEE, Chief Judge.
Richard O'Neal ("Plaintiff") appeals from an opinion and award from the North Carolina Industrial Commission ("the Commission") denying Plaintiff's request for indemnity compensation after 21 May 2012 from Inline Fluid Power, Inc. & Automotive Parts Co., Inc. ("Employer") and Auto Owners Insurance Company ("Carrier") (collectively "Defendants"). We affirm.
I. Facts and Procedural History
At the age of sixty-eight, Plaintiff began working for Employer in 2006, after working for eighteen years servicing diesel trucks for Bobby Murray Chevrolet, and for three to four years performing front-end alignments and changing tires at Raleigh Tire & Oil. Plaintiff worked forty hours per week for Employer delivering automotive parts, stocking inventory, and performing some janitorial tasks. The parties stipulate that, on 10 May 2011, while making a delivery of two long boxes, Plaintiff sustained an injury by accident arising out of, and in the course of, his employment with Employer when one of the boxes "suddenly tilted and struck him on each side of his groin area." Plaintiff reported the injury by accident to Employer, who contacted Carrier to report Plaintiff's claim.
Plaintiff was evaluated by Dr. Crystal Baker ("Dr.Baker"), a board-certified family medicine physician, a few days after his injury by accident. At this visit, Plaintiff complained of back pain and bilateral hip pain. Plaintiff returned to Dr. Baker one week later complaining that his "right hip pain continued and was running down his right leg to his ankle." Dr. Baker took Plaintiff out of work, prescribed medication for his pain, ordered X-rays of his lumbar spine and pelvis, and referred him to Raleigh Orthopaedics. Plaintiff then visited Raleigh Orthopaedics, where he had undergone a lumbar fusion in 2008 for pre-accident complaints of "hip pain with numbness and tingling down the right leg," which Dr. Baker determined were related to Plaintiff's sciatic nerve. At his June 2011 visit to Raleigh Orthopaedics, Plaintiff was prescribed steroids and a muscle relaxer, was referred for physical therapy, and was ordered to remain out of work pending his next month's appointment. Although Plaintiff reported some improvement while on the steroids, in July 2011, Plaintiff reported that his pain had returned and he was "unable to return to work with increased pain with standing and walking, centered in [his] bilateral groins." Consequently, Plaintiff was ordered to remain out of work and to continue physical therapy.
Over the next two months, Plaintiff continued to complain of an "aching and throbbing" bilateral groin pain, and was referred to Dr. Robert Terlinck Wyker ("Dr.Wyker"), a board-certified orthopedic surgeon who specialized in total joint replacement. Dr. Wyker first treated Plaintiff with a steroid injection in his hip for diagnostic and pain-relief purposes. Although Plaintiff reported some improvement in his right hip immediately after the injection, Plaintiff had continued groin pain and Dr. Wyker noted a loss of internal rotation. After ordering and reviewing an MRI of Plaintiff's hip, Dr. Wyker "concluded that the best surgical option was a right total hip replacement," which Plaintiff underwent in February 2012. Plaintiff reported that the surgery provided him "with significant pain relief."
When Dr. Wyker last saw Plaintiff on 5 April 2012, Plaintiff was "doing so well that Dr. Wyker released him from his care." However, the Commission found there was no evidence in the record that Dr. Wyker discussed returning Plaintiff to work at that April visit. As of May 2012, Plaintiff was "able to walk without assistance in his residence and to the mailbox and do most of his basic daily activities with minimal assistance," although Plaintiff's wife still had to help Plaintiff tie his shoes. Plaintiff did not think he could return to his job with Employer because he "would have difficulty getting in and out of the truck," and Employer "did not have lighter duty work available" for Plaintiff.
Dr. Wyker testified at his 21 May 2012 deposition that someone who had a hip replacement, like Plaintiff, should avoid doing "high impact running activities" and should avoid flexing his knee above the hip and twisting it inward. Dr. Wyker also testified that he would "be worried if [Plaintiff] was doing heavy lifting and squatting at the same time," but he did not testify that Plaintiff was incapable of returning to work in any capacity as a result of his 10 May 2011 injury by accident.
Within two months of his 10 May 2011 injury by accident, Plaintiff filed an Industrial Commission Form 18, notifying Employer and Carrier that he sustained an injury to his groin area arising out of, and in the course of, his employment. In response, Employer filed a Form 63, in which it indicated it would pay medical compensation only, but not indemnity benefits, for Plaintiff's 10 May 2011 groin injury. One month after Plaintiff's February 2012 hip replacement surgery, Employer filed a Form 61 denying Plaintiff's claim on the grounds that Plaintiff "ha[d] not presented any medical evidence to prove [his] back and hip [we]re related to this WC claim," and noting that Employer "ha[d] been requesting [the] past 5 yrs of medical records since June 2011 [,] which [Plaintiff had] failed to produce." Plaintiff requested that the claim be assigned for a hearing, and the matter was heard by a deputy commissioner in May 2012.
The issues before the deputy commissioner included: whether Plaintiff's hip and back injuries were causally related to his compensable groin injury; whether the medical treatment rendered to Plaintiff after 10 May 2011, including the hip replacement surgery, was "proximately caused by the injury he sustained" on 10 May; whether Plaintiff was entitled to temporary total disability payments from 13 May 2011 and ongoing until he returned to suitable employment; and whether Employer's acceptance of the claim via its filing of the Form 63 barred Employer from later denying compensability after ninety days, notwithstanding Employer's "attempt to classify [its] acceptance as 'medical only.' " The deputy commissioner's opinion and award determined that the medical treatment rendered to Plaintiff after 10 May 2011, including the hip replacement surgery, was proximately caused by Plaintiff's injury by accident, and concluded that Plaintiff was entitled to payment of all medical expenses incurred or to be incurred for as long as such treatments may be required. The deputy commissioner made no findings or conclusions regarding Plaintiff's contention that Employer's acceptance of the claim via Employer's filing of the Form 63 barred it from denying compensability. The deputy commissioner awarded Plaintiff temporary total disability compensation, continuing until Plaintiff returned to work or until further order by the Commission. Defendants appealed from the deputy commissioner's opinion and award, challenging the determination that Plaintiff sustained compensable injuries to his back and right hip, and that Plaintiff was entitled to temporary total benefits after 21 May 2012. Plaintiff did not appeal from the deputy commissioner's opinion and award.
The matter was heard by the Commission on 30 July 2013. In its self-designated "Interlocutory Opinion and Award" entered 14 October 2013 ("the Interlocutory Opinion and Award"), the Commission found that Plaintiff's complaints of groin pain after his 10 May 2011 injury by accident "were consistent with a hip injury," and that such injury aggravated or accelerated his preexisting osteoarthritis and, thus, required that Plaintiff undergo the hip replacement surgery. The Commission also found that, as a result of his 10 May 2011 injury by accident, Plaintiff "was unable to earn any wages in any employment" from 14 May 2011 to 21 May 2012. The Commission then found that, as of 21 May 2012, Plaintiff "remained incapable of returning to work for [Employer]," but "was capable of some employment within the restrictions discussed by Dr. Wyker at his deposition."
The Commission also determined that the record did not permit it to find that as of 21 May 2012-the date of Dr. Wyker's deposition, at which Dr. Wyker testified about Plaintiff's permanent work restrictions-it would have been futile for Plaintiff to look for work. Consequently, the Commission ordered that the parties had sixty days from the filing of its opinion and award in which "to present further evidence, via depositions taken at [D]efendants ['] expense, on the issue of disability" after 21 May 2012. Neither party sought to appeal from the Interlocutory Opinion and Award.
The Commission entered a subsequent opinion and award ("the Final Opinion and Award") on 4 June 2014 addressing the issue of Plaintiff's disability after 21 May 2012. The Final Opinion and Award incorporated by reference the Interlocutory Opinion and Award "as though fully set forth [t]herein." The Commission then considered the depositions of Michael Allen Fryar ("Mr.Fryar"), a certified rehabilitation counselor and vocational evaluator who performed a vocational assessment on Plaintiff upon his request, and of Jackie Jessie ("Ms.Jessie"), a certified disability management specialist who performed a labor market survey for Plaintiff at the behest of Defendants.
After undergoing a functional capacity evaluation ("FCE") on 6 November 2013, the Commission found that Plaintiff "was able to lift consistent with the medium physical demand level." On 21 November 2013, Dr. Wyker composed a note indicating that he reviewed Plaintiff's FCE report at the request of Plaintiff's counsel, and recommended that Plaintiff "be released to work within the guidelines of the FCE." Consequently, the Commission determined that Plaintiff "was capable of work at the sedentary physical demand level" "due to [P]laintiff's inability to perform walking and/or standing on a frequent basis."
After making findings regarding the testimonies of both Mr. Fryar and Ms. Jessie, the Commission gave greater weight to Ms. Jessie's opinion "that it would not be futile for [P]laintiff to search for employment than to the opinion of Mr. Fryar to the contrary." The Commission found that Ms. Jessie "had located several available jobs suitable for [P]laintiff in his geographical area," and further found that Mr. Fryar's opinion "was given without his having made any attempt to determine whether suitable jobs were available in [P]laintiff's area having determined that there was[ ] 'not an employment goal that [Mr. Fryar could] identify for [Plaintiff] to pursue.' " As a result, the Commission concluded that Plaintiff failed to meet his burden to prove disability after 21 May 2012, because there was "no evidence that [P]laintiff was medically incapable of work in any employment or that [P]laintiff ha[d] made any effort to obtain employment," and that Plaintiff "failed to prove by a preponderance of the evidence that it would be futile for him to seek other employment." Accordingly, the Commission denied Plaintiff's request for indemnity compensation after 21 May 2012.
One commissioner dissented from the Final Opinion and Award and found that Ms. Jessie's testimony "merely focused on the fact that there are jobs that [P]laintiff could apply for, but [Ms. Jessie] did not consider or address the critical issue of futility and whether it would be pointless or useless for [P]laintiff to pursue the jobs she identified." Because the dissent concluded that Plaintiff "offered competent evidence on the issue of futility and Defendants offered none," the dissent opined that it would conclude that Plaintiff carried the burden of proving disability and would have awarded Plaintiff ongoing total disability benefits until further order of the Commission. Plaintiff appeals.
II. Analysis
"The Industrial Commission and the appellate courts have distinct responsibilities when reviewing workers' compensation claims." Billings v. Gen. Parts, Inc.,187 N.C.App. 580, 584, 654 S.E.2d 254, 257 (2007) (citing Deese v. Champion Int'l Corp.,352 N.C. 109, 114-16, 530 S.E.2d 549, 552-53 (2000) ), supersedeas and disc. review denied,362 N.C. 233, 659 S.E.2d 435 (2008). "Under our Workers' Compensation Act [ ('the Act') ], the Commission is the fact finding body," Adams v. AVX Corp.,349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (internal quotation marks omitted), reh'g denied,350 N.C. 108, 532 S.E.2d 522 (1999), and is "the sole judge of the credibility of the witnesses and the weight to be given their testimony." Anderson v. Lincoln Constr. Co.,265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). This Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. [Rather, our] duty goes no further than to determine whether the record contains any evidence tending to support the finding." Id."The findings of fact by the Industrial Commission are conclusive on appeal if supported by anycompetent evidence," Gallimore v. Marilyn's Shoes,292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977) (emphasis added), and such findings are conclusive "even though there be evidence that would support findings to the contrary." Jones v. Myrtle Desk Co.,264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965) (per curiam). Our Court "may set aside findings of fact only upon the ground they lack evidentiary support." Anderson,265 N.C. at 434, 144 S.E.2d at 274.
A. Challenge to the Commission's Disability Analysis
Plaintiff first asserts the Commission "misapplied the law" when it considered whether Plaintiff met his burden to establish his disability and considered whether Plaintiff was entitled to a presumption of continuing disability after 21 May 2012.
Under the Act, the term "disability" means "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen.Stat. § 97-2(9) (2013). Thus, "disabilityrefers not to physical infirmity but to a diminished capacity to earn money." Hall v. Thomason Chevrolet, Inc.,263 N.C. 569, 574, 139 S.E.2d 857, 861 (1965). "In order to obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of his disability and its extent." Hendrix v. Linn-Corriher Corp.,317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986). In order to support a conclusion of disability, the Commission must find:
(1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.
Hilliard v. Apex Cabinet Co.,305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). Thus, "[t]he burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment." Russell v. Lowes Prod. Distribution,108 N.C.App. 762, 765, 425 S.E.2d 454, 457 (1993).
An employee may meet the burden of proving the first two elements of Hilliardin one of four ways, Medlin v. Weaver Cooke Constr ., LLC,367 N.C. 414, 422, 760 S.E.2d 732, 737 (2014) :
(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Russell,108 N.C.App. at 765, 425 S.E.2d at 457 (citations omitted). "[A] claimant must also satisfy the third element, as articulated in Hilliard,by proving that his inability to obtain equally well-paying work is because of his work-related injury." Medlin,367 N.C. at 422, 760 S.E.2d at 737. Once a claimant meets "the initial burden of proving that his/her wage earning capacity has been impaired by injury," Kennedy v. Duke Univ. Med. Ctr.,101 N.C.App. 24, 32-33, 398 S.E.2d 677, 682 (1990), "the defendant who claims that the plaintiff iscapable of earning wages must come forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations." Id.at 33, 398 S.E.2d at 682.
However, a plaintiff is entitled to a presumption of disability in his or her favor based on one of three limited circumstances:
[ (1) ] the employer and employee may execute a Form 21, Agreement for Compensation for Disability, that stipulates to a continuing disability and is subsequently approved by the Industrial Commission[;]
[ (2) ] the employer and employee may execute a Form 26, Supplemental Agreement as to Payment of Compensation, that stipulates to a continuing disability and is later approved by the Commission[;]
[ (3) ] an employee may prove to the Industrial Commission the existence of a disability.
Johnson v. S. Tire Sales & Serv.,358 N.C. 701, 706, 599 S.E.2d 508, 512 (2004) (citations omitted). In the absence of such circumstances, "the burden of proving 'disability' remains with plaintiff, even if the employer has admitted 'compensability.' " Clark v. Wal-Mart,360 N.C. 41, 44, 619 S.E.2d 491, 493 (2005).
In the present case, in its Interlocutory Opinion and Award, the Commission found that, as a result of the 10 May 2011 injury by accident, Plaintiff "was unable to earn any wages in any employment" from 14 May 2011 to 21 May 2012. Consequently, the Commission concluded that Plaintiff "produced sufficient evidence ... under the first prong of Russell" to prove that he was disabled from 14 May 2011 to 21 May 2012 and, as such, ordered that Defendants pay Plaintiff temporary total disability benefits for this period. The Commission further found that, as of 21 May 2012, Plaintiff "remained incapable of returning to work for [Employer]." However, it determined that, as of that date, Plaintiff "was capable of some employment within the restrictions discussed by Dr. Wyker at his deposition." Thus, the Commission found that, "[i]n order to make a decision as to the extent of [P]laintiff's disability after [21 May 2012], the Full Commission need[ed] to consider evidence regarding whether [P]laintiff ha[d] made reasonable but unsuccessful efforts to look for work within his restrictions," and ordered that the parties had sixty days from the filing of the Interlocutory Opinion and Award within which to present further evidence by depositions "taken at [Defendants'] expense" on the issue of disability after 21 May 2012. The Commission then considered the parties' supplemental briefs, and issued its Final Opinion and Award "sole[ly]" on the issue of the extent of Plaintiff's disability after 21 May 2012.
Although Plaintiff asserts that the Commission correctly concluded that his evidence was sufficient to prove disability under the first prong of Russell,Plaintiff does not acknowledge that the Commission expressly concluded that he only proved he was disabled through 21 May 2012. Because the Commission also found Plaintiff "was capable of some employment within the restrictions discussed by Dr. Wyker at his [21 May 2012] deposition," the Commission invited the parties to present further evidence for the express purpose of making a determination regarding "the extent of [P]laintiff's disability after 21 May 2012." Consequently, Plaintiff's assertion that "[t]here was no need for [P]laintiff to put on additional evidence as to disability" because "the Commission had already concluded that [P]laintiff had met his burden" does not accurately reflect the record before us or the proceedings below.
Plaintiff further insists the Commission "mistakenly denied ongoing disability benefits by claiming that a 'presumption' did not apply." However, we conclude the Commission did not err by considering whether Plaintiff was entitled to the benefit of the presumption of continuing disability after this date under any of the limited circumstances for which the presumption is allowed. Cf. Smith v. Sealed Air Corp.,127 N.C.App. 359, 361, 489 S.E.2d 445, 446 (1997) ( "Generally, the burden lies with an injured employee to establish the existence and extent of disability, i.e.,the incapacity to earn wages. However, where there has been a previous determination of total disability, such as in the case sub judicewhere both a Form 21 and a Form 26 agreement were approved by the Commission, the employee is entitled to a presumption of continuing disability." (citation omitted)). After determining that the limited circumstances that would entitle Plaintiff to the presumption of continuing disability were not applicable to the present case, the Commission examined whether Plaintiff met his burden of proving disability after 21 May 2012 under Russell.The Commission then concluded that Plaintiff failed to present evidence of a disability under the first or second prongs of Russell,and that Plaintiff "failed to prove by a preponderance of the evidence that it would be futile for him to seek other employment," in accordance with the third prong of Russell.[1] Accordingly, we do not believe the Commission acted under a misapprehension of law when it considered whether Plaintiff met his burden of establishing disability or was entitled to a presumption of disability after 21 May 2012.
B. Proof of Disability Under Third Prong of Russell
Plaintiff next contends the Commission "misapplied the law" by concluding that Plaintiff did not meet his burden of proving disability after 21 May 2012 under the third prong of Russell.We disagree.
As stated above, the third prong of Russellprovides that an employee may meet his burden "to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment," by producing "evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment." Russell,108 N.C.App. at 765, 425 S.E.2d at 457. Thus, "[t]o prove disability, the employee need not prove she unsuccessfully sought employment if the employee proves that, because of her age, work experience, training, education, or any other factor, seeking employment at pre-injury wages would be futile." Coppley v. PPG Indus., Inc.,133 N.C.App. 631, 634, 516 S.E.2d 184, 187 (1999) ; see Peoples v. Cone Mills Corp.,316 N.C. 426, 444, 342 S.E.2d 798, 809 (1986) ("[An] employee should not be precluded from compensation for failing to engage in the meaningless exercise of seeking a job which does not exist.").
"Once the employee has met her initial burden of proving disability, the burden then shifts to the employer to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a job at pre-injury wages." Coppley,133 N.C.App. at 634-35, 516 S.E.2d at 187 (internal quotation marks omitted). "Suitable employment" is defined as "any job that a claimant is capable of performing considering his age, education, physical limitations, vocational skills, and experience." Shah v. Howard Johnson,140 N.C.App. 58, 68, 535 S.E.2d 577, 583 (2000) (internal quotation marks omitted), disc. reviews denied and dismissed as moot,353 N.C. 381, 547 S.E.2d 17 (2001). An employee is "capable of getting a job" "if there exists a reasonable likelihood ... that he would be hired if he diligently sought the job." Burwell v. Winn-Dixie Raleigh, Inc.,114 N.C.App. 69, 73-74, 441 S.E.2d 145, 149 (1994) (omission in original) (internal quotation marks omitted). However, "[i]t is not necessary ... that the employer show that some employer has specifically offered [the claimant] a job." Id.at 74, 441 S.E.2d at 149. If the employer produces evidence "that there are suitable jobs available which the claimant is capable of getting, the claimant has the burden of producing evidence that either contests the availability of other jobs or his suitability for those jobs, or establishes that he has unsuccessfully sought the employment opportunities located by his employer."Id.
In the present case, when considering "the extent of [P]laintiff's disability after 21 May 2012," the Commission made the following relevant findings of fact:
3. On 6 November 2013, [P]laintiff underwent a functional capacity evaluation ("FCE") performed by Michael Shank MS, PT of Select Physical Therapy. The results of the FCE showed that [P]laintiff was able to lift consistent with the medium physical demand level. However, the report indicated that [P]laintiff, "may be best suited for work in the Sedentary demand level for an 8 hour work day," due to [P]laintiff's inability to perform walking and/or standing on a frequent basis.
....
6. The Full Commission finds based upon the preponderance of the evidence in view of the entire record that, after 21 May 2012, [P]laintiff was capable of work at the sedentary physical demand level.
7. Plaintiff retained certified rehabilitation counselor and certified vocational evaluator Michael Allen Fryar to perform a vocational assessment of [P]laintiff. Mr. Fryar based his assessment on a meeting with [P]laintiff during which they discussed [P]laintiff's education and work experience, [P]laintiff's medical records, the transcripts of the Industrial Commission hearing and medical depositions taken in this case, [P]laintiff's 6 November 2013 FCE, and statistics from various sources including the Bureau of Labor Statistics, Employment Security Commission, and United States Census Bureau. Mr. Fryar testified that the significant vocational factors that he considered in making his assessment in [P]laintiff's case were his, "medical work status as defined by his physician," his education, his age, and his work skill set.
8. Based upon his evaluation and assessment of [P]laintiff, Mr. Fryar opined, "there's not an employment goal that I can identify for [P]laintiff to pursue.... And given that I cannot develop a goal which would be included in a-which would be-would have been included in a rehab plan, then a job search would be futile, in my opinion."
9. Mr. Fryar did not contact any prospective employers in connection with his assessment of [P]laintiff. Mr. Fryar stated that doing so would be a "moot point in the fact there's not a job goal I could identify."
10. Defendants retained certified disability management specialist Jackie Jessie to perform a labor market survey for [P]laintiff. In connection with the survey, Ms. Jessie reviewed [P]laintiff's medical records, the medical depositions taken in the case, [P]laintiff's hearing testimony, and the Full Commission's Interlocutory Opinion and Award. Thereafter, based upon [P]laintiff's work history, age, and the work restrictions provided by Dr. Wyker in his 21 May 2012 deposition, Ms. Jessie identified five job openings located within a fifty mile radius of [P]laintiff's home which she determined to be suitable for [P]laintiff. These positions included a greeter position at Wal-Mart, a customer service advisor position at Just Tires, a store manager trainee position, also at Just Tires, a customer care associate position at PetSmart, and an assembly position at Flanders.
11. Following the completion of her initial labor market survey, Ms. Jessie was provided with a copy of [P]laintiff's 6 November 2013 FCE and Dr. Wyker's 21 November 2013 note. Thereafter, Ms. Jessie completed a second labor market survey based upon the sedentary physical demand level restrictions recommended by the FCE and Dr. Wyker. Ms. Jessie located three positions in connection with her second labor market survey, all of which were located in Raleigh. These positions were: a receptionist/greeter position at Auto Direct, a customer service representative with Anderson Automotive Group Nissan, and a customer service representative with Next Staff. While Auto Direct and Anderson Automotive Group Nissan indicated that they only discussed salary with applicants, the wage for the position with Next Staff was between $10.00 and $10.50 per hour. Ms. Jessie contacted the employers advertising these positions to confirm their availability.
12. While the employers for the positions identified by Ms. Jessie preferred that applicants hold a high school diploma or equivalent, those qualifications were not required. Furthermore, while Auto Direct preferred that applicants for the receptionist/greeter position have computer skills, the employer indicated that it would be willing to train the successful applicant to use a computer.
13. While Ms. Jessie acknowledged that [P]laintiff's age might be a potential obstacle to [P]laintiff's job search, she also noted that some employers view older, more experienced workers favorably, and are willing to train them due to their loyalty and strong work ethic, which [P]laintiff appeared to have in light of the fact that he returned to work at the age of 68. Ms. Jessie also indicated that [P]laintiff's experience in the automotive industry might mitigate any obstacles posed by his age.
14. Ms. Jessie further opined to a reasonable degree of certainty as a vocational expert based upon [P]laintiff's completion of the tenth grade and training as a diesel mechanic, his work experience, including his employment in the automotive sector, and his positive work ethic, that it would not be futile for [P]laintiff to search for employment.
The Commission then found that it gave "greater weight to the opinion of Ms. Jessie that it would not be futile for [P]laintiff to search for employment than to the opinion of Mr. Fryar to the contrary." The Commission also found that, "[a]t the time she gave her opinion, Ms. Jessie had located several available jobs suitable for [P]laintiff in his geographical area." The Commission further found that "Mr. Fryar's opinion, conversely, was given without his having made any attempt to determine whether suitable jobs were available in [P]laintiff's area having determined that there was, 'not an employment goal that [he could] identify for [Plaintiff] to pursue.' "
The evidence in support of the Commission's findings showed that, after reviewing Plaintiff's medical reports, the 6 November 2013 FCE, the deposition from his treating physician, which included Plaintiff's return-to-work restrictions, a letter from Dr. Wyker dated 21 November 2013, and the transcript from the hearing before the Commission, Ms. Jessie contacted employers within the local community to confirm if positions were currently available. She further identified what the demands of those positions were and whether the employers would be able to provide accommodations, when necessary, in order to identify jobs that were suitable employment opportunities for Plaintiff to pursue. Although Ms. Jessie could not guarantee that the employers she identified in her labor market survey would hire Plaintiff, Ms. Jessie affirmed that Plaintiff was capable of pursuing the job opportunities she had identified in her labor market report, and that such opportunities were within his work restrictions. Since "[t]he findings of fact by the Industrial Commission are conclusive on appeal if supported by anycompetent evidence," Gallimore,292 N.C. at 402, 233 S.E.2d at 531 (emphasis added), we conclude that the evidence in the record supported the findings of fact excerpted above, and these findings support the Commission's conclusion that Plaintiff "failed to prove by a preponderance of the evidence that it would be futile for him to seek other employment." Accordingly, the Commission did not err by concluding that Plaintiff did not meet his burden of proving disability after 21 May 2012, based on Ms. Jessie's opinion that it was not futile for Plaintiff to seek employment. We note that Plaintiff urges this Court to conclude that the Commission's finding that he "ha[d] not produced any evidence of a job search" was a "misstatement of the law," because "evidence of a job search is not necessary if it would be futile." While we agree that a claimant "should not be precluded from compensation for failing to engage in the meaningless exercise of seeking a job which does not exist," see Peoples,316 N.C. at 444, 342 S.E.2d at 809, the Commission's conclusion that Plaintiff "failed to prove by a preponderance of the evidence that it would be futile for him to seek other employment" was supported by the findings of fact excerpted above. Accordingly, we decline to address Plaintiff's remaining assertions with respect to this issue on appeal.
C. Challenge to End of Disability on 21 May 2012
Plaintiff next contends the Commission erred by ordering Defendants to pay temporary total disability compensation onlythrough 21 May 2012, because Plaintiff asserts there was no competent evidence to support the Commission's termination of his disability on that "arbitrary" date. Nevertheless, because "[t]he findings of fact by the [Commission] are conclusive on appeal if supported by any competent evidence," Gallimore,292 N.C. at 402, 233 S.E.2d at 531, we must disagree.
In the present case, the Commission found that "[a]s of [4 May 2012,] the date [that Plaintiff] testified before the [d]eputy [c]ommissioner, [Plaintiff] had not been advised by Dr. Wyker that he could return to work with restrictions." However, the Commission then found that Plaintiff "was capable of some employment within the restrictions discussed by Dr. Wyker at his deposition" on 21 May 2012, based on the following testimony given in response to the question of whether Plaintiff "nowha[d] any permanent [work] restrictions" (emphasis added): Plaintiff should avoid "doing high impact running activities" and should avoid "flexing [his] knee above [his] hip and twisting inward[;]" Dr. Wyker had "[n]o real lifting restrictions" for Plaintiff, but he would "be worried if [Plaintiff] was doing heavy lifting and squatting at the same time[;]" Plaintiff could "have difficulty with heavy labor[;]" and "[o]ther than that the hip will sort of tell him what he can and cannot do."
Plaintiff asserts Dr. Wyker's testimony as to Plaintiff's restrictions was "mere speculation" because, after Plaintiff's hip replacement surgery in February 2012, Dr. Wyker saw Plaintiff in April 2012, when Dr. Wyker released Plaintiff from his care because he was "doing so well," but Dr. Wyker had not seen Plaintiff "in over a month" at the time of his 21 May 2012 deposition. However, Dr. Wyker testified he joined his orthopedic practice in 1987, that he performed an average of 150 to 200 hip replacement procedures each year, and that he had been doing these procedures "for a long time." Therefore, Dr. Wyker's testimony regarding the permanent restrictions for Plaintiff, which was based on his years of experience with this procedure, as well as his visit with Plaintiff just one month prior, was not "mere speculation" and was competent evidence to support the Commission's finding that Plaintiff "was capable of some employment within the restrictions discussed by Dr. Wyker at his deposition" on 21 May 2012. Additionally, because there was competent evidence to support the Commission's subsequent finding that Plaintiff was capable of work at the sedentary physical demand level in accordance with the guidelines of Plaintiff's 6 November 2013 FCE, we conclude there was competent evidence to support the Commission's determination that Plaintiff "failed to meet his burden of proving disability after 21 May 2012."
D. Challenge to Portion of Form 63
Defendants filed a Form 63 on 22 July 2011, which is entitled "Notice to Employee of Payment of Compensation Without Prejudice (G .S. § 97-18(d) ) or Payment of Medical Benefits Only Without Prejudice (G.S. § 97-2(19) & § 97-25 )." This form directs an employer to complete one of two sections: Section 1, entitled "Indemnity Benefits;" or Section 2, entitled "Medical Benefits Only (Paid Without Prejudice, NOT Subject to 90-Day Requirement in Section 1 Above)." The description accompanying Section 1 on Form 63 provides:
Payments of workers' compensation benefits, both indemnity (money) and medical, will be made without prejudice to later deny your claim or Defendants' liability. Compensation may be continued during the investigation of your claim. The investigation may take up to 90 days, with a possible 30 day extension. During this period, Defendants may admit liability, contest your claim or Defendants' liability, or by Defendants' lack of action, waive the right to contest your claim.
The description accompanying Section 2 on Form 63 provides:
Payment of medical compensation is expressly being made without prejudice to Defendants to later deny the compensability of your claim. In the event you miss more than 7 days of work, you must notify your employer or carrier because you may be entitled to additional benefits. Completion of this section (Section 2) does notconstitute an agreement to pay indemnity (money) benefits to you under G.S. § 97-18(d).
In his final issue on appeal, Plaintiff contends the Commission acted beyond the scope of its authority by creating Section 2-the "Medical Benefits Only" section-on Form 63, which allows an employer to indicate that it will pay medical compensation only, rather than both medical compensation and indemnity compensation, without prejudice to the employer to later deny the compensability of an employee's claim. Plaintiff asserts that Form 63's "Medical Benefits Only" section "allows the [E]mployer to escape" the provisions of N.C. Gen.Stat. § 97-18(d), which provide that an employer waives its right to contest the compensability of, or its liability for, a "claim for compensation," if not contested within ninety days from the date the employer had notice of the injury, and Plaintiff insists that the "Medical Benefits Only" section was "created by the Commission out of thin air." We disagree.
"[T]he legislature always has provided for, and continues to provide for, two distinct components of an award under the Workers' Compensation Act:" "(1) payment for the cost of medical care, now denominated medical compensation, which consists of payment of the employee's medical expenses incurred as a result of a job-related injury;" and "(2) general compensation for financial loss other than medical expenses, which includes payment to compensate for an employee's lost earning capacity and payment of funeral expenses." Cash v. Lincare Holdings,181 N.C.App. 259, 264, 639 S.E.2d 9, 14 (2007) (internal quotation marks omitted). In other words, "[t]he relief obtainable [under the Act] as general compensation is different and is separate and apart from the medical expenses recoverable under the Act's definition of medical compensation." Collins v. Speedway Motor Sports Corp.,165 N.C.App. 113, 119, 598 S.E.2d 185, 190 (2004) (internal quotation marks omitted). Because "the Commission's determination that an employer must pay an injured employee medical compensation pursuant to [N.C. Gen. Stat .] § 97-25 is a separate determination from whether an employer owes compensation as a result of an employee's disability, ... [n]either determination is a necessary prerequisite for the other." Cash,181 N.C.App. at 264, 639 S.E.2d at 14.
As indicated on the face of Form 63, Section 1 concerns the payment of "compensation," as defined in N.C. Gen.Stat. § 97-2(11) and in accordance with N.C. Gen.Stat. § 97-18(d), and Section 2 concerns the payment of "medical compensation," as defined in N.C. Gen.Stat. § 97-2(19) and in accordance with N.C. Gen.Stat. § 97-25. N.C. Gen.Stat. § 97-18(d) expressly concerns claims for "compensation," and does not concern claims for "medical compensation," which are the subject of N.C. Gen.Stat. § 97-25. Therefore, we find no support for Plaintiff's contention that Form 63's "Medical Benefits Only" section allows employers to "escape" the 90-day waiver provision of N.C. Gen.Stat. § 97-18(d), since that statutory subsection is expressly applicable to claims for "compensation," not to claims for "separate determination[s]" concerning "medical compensation." See Cash,181 N.C.App. at 264, 639 S.E.2d at 14. Instead, we conclude that the procedure reflected in the challenged portion of Form 63-which was established by the Commission in accordance with the Commission's authority pursuant to N.C. Gen.Stat. § 97-80 -that allows employers to provide prompt payments of medical benefits to injured employees without prejudice to later deny the compensability of an employee's claim for compensation is both permitted by statute, seeN.C. Gen.Stat. § 97-25 (2013) ("Medical compensation shall be provided by the employer."), and allows an injured employee an opportunity to expeditiously receive medical compensation payments necessary "to effect a cure or give relief[,] and ... to lessen the period of disability[.]" N.C. Gen.Stat. § 97-2(19). Accordingly, we conclude that Plaintiff's contention that the "Medical Benefits Only" section of Form 63 was created by the Commission in violation of its statutory authority is without merit.
AFFIRMED.
Judges BRYANT and STEELMAN concur.
Report per Rule 30(e).
Opinion
Appeal by Plaintiff from opinion and award entered 4 June 2014 by the North Carolina Industrial Commission. Heard in the Court of Appeals 16 February 2015.

Since Plaintiff had not obtained other employment at the time of the hearing, the Commission's conclusion could not have been based on the fourth prong of Russell.